FEB 3 2026 PM 1:42
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-25-1

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:26 CR 19 (SFR)(TOF) |
| v. | VIOLATIONS: |
| | 18 U.S.C. § 371 (Conspiracy) |
| AMITOJ KAPOOR and | 18 U.S.C. § 1343 (Wire Fraud) |
| SIDDHARTH LILLANEY | 18 U.S.C. § 1028(a)(7) (Identity Fraud) |
| | 18 U.S.C. § 1028A (Aggravated Identity Theft) |
| | 18 U.S.C. § 1956(h) (Money Laundering Conspiracy) |
| | 18 U.S.C. § 1956(a)(1)(B)(i) (Money Laundering) |

INDICTMENT

The Grand Jury charges:

COUNT ONE
(Conspiracy to Commit Wire Fraud and Identity Fraud)

At all times relevant to this Indictment:

The Defendants

1.    Defendant AMITOJ KAPOOR resided in Glastonbury, Connecticut, and maintained an address in New York City, New York.

2.    Defendant SIDDHARTH LILLANEY resided in Glastonbury, Connecticut, and maintained addresses in New York City, New York and New Jersey.

3.    KAPOOR operated and controlled bank accounts in his own name at financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC") that engaged in, and the activities of which affected, interstate and foreign commerce, including, *inter alia*, Bank of America and Ally Bank.

4.    LILLANEY operated and controlled bank accounts in his own name at FDIC-insured financial institutions that engaged in, and the activities of which affected, interstate and

foreign commerce, including, *inter alia*, Webster Bank.

5.    KAPOOR and LILLANEY opened, operated, and controlled accounts, in their own names and in the names of other individuals, through online financial service platforms (referred to herein as "Fintech companies"). The Fintech companies each were partnered with and backed by FDIC-insured financial institutions that engaged in, and the activities of which affected, interstate and foreign commerce.

Victim-Individuals

6.    Certain victims whose identities are known to the Grand Jury and whose means of identification were knowingly transferred, possessed and used by the defendants without lawful authority and in connection with unlawful activity are referred to herein by their initials and are referred to collectively as "Identity Theft Victims."

Background on Online Gambling

7.    Online gambling companies offered the ability to wager or bet using a computer with access to the internet or using a cell phone employing an application or "app." Such companies included the entities commonly known as FanDuel, Draft Kings, and BetMGM.   Users could gamble online through such companies on, *inter alia*, sporting events, casino games, and horse racing.

8.    The regulation of online gambling was based on the geographic location of the user. Accordingly, online gambling entities were required to collect geolocation data to confirm the user was both within the geographic boundaries of a state permitting online gambling and in compliance with the state's gaming laws.

9.    FanDuel, specifically, was accessible through both a website and an app. To open a new account at FanDuel, users were required to accept certain terms and conditions, and were

required to enter personal identifying information ("PII"), including first and last name, address, date of birth, and the last four digits of their Social Security number. FanDuel used third-party vendors to verify that a user opening an account was who they purported to be. If additional background details were deemed necessary, FanDuel required the user to provide a complete Social Security number and to answer certain verification questions. FanDuel's terms and conditions expressly prohibited using another individual's identity or PII.

10.     Online gambling entities, including FanDuel, frequently offered promotional "bonuses," "credits," or "bonus bets" when a user opened an account or made an initial bet. Bonus bets were typically valued in dollars which a user could use to gamble, but could not immediately convert to cash. However, winnings generated from gambling with bonus bets could be converted and withdrawn in U.S. dollars.

11.     Online gambling entities, including FanDuel, permitted users to make deposits and withdrawals from their accounts using various methods. FanDuel offered users the option of opening a virtual stored value card called Sightline Play-Plus ("Sightline")—which was backed by Sutton Bank, a state-chartered FDIC-insured financial institution—which then could be used to make deposits to and withdrawals from their FanDuel accounts. A FanDuel user who transferred winnings through a Sightline account was typically able to withdraw that sum in U.S. dollars almost immediately.

<u>The Conspiracy</u>

12.     Beginning in or about April 2021 and continuing through on or about the date of this Indictment, in the District of Connecticut and elsewhere, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY, together with others, known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree together and with each other,

to commit offenses against the United States, as follows:

a) wire fraud in violation of Title 18, United States Code, Section 1343, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to utilize interstate wires in furtherance of that scheme and artifice; and

b) identity fraud in violation of Title 18, United States Code, Section 1028(a)(7), that is, to knowingly transfer, possess, and use, without lawful authority, a means of identification of another person with the intent to commit, to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, specifically wire fraud and money laundering.

<u>Object and Purpose of the Conspiracy</u>

13.    The object and purpose of the conspiracy was for KAPOOR, LILLANEY, and their co-conspirators to enrich themselves by using the means of identification of another person without lawful authority to carry out a scheme and artifice to defraud and to obtain money and property from online gambling companies, including FanDuel.

<u>Manner and Means of the Conspiracy</u>

14.    It was a part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did acquire, transfer, possess and use the means of identifications of other persons, including by purchasing the Identity Theft Victims' names, addresses, Social Security numbers, and other PII over the internet.

15.    It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did falsely and fraudulently open multiple accounts with online gambling

entities using the names and other PII of the Identity Theft Victims, and then used those false and fraudulent accounts to gamble.

16.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did open, maintain, and use accounts at BeenVerified.com ("BeenVerified") and TruthFinder.com ("TruthFinder") to obtain PII and background information concerning the Identity Theft Victims, including those individuals' full names, dates of birth, phone numbers, addresses, and employment history.

17.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did use Identity Theft Victims' PII and background information obtained from BeenVerified and TruthFinder to answer verification questions as part of fraudulently opening online gambling accounts and falsely and fraudulently misrepresenting their identities to online gambling companies.

18.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did use a feature termed "Hide My Email" to conceal their personal email addresses and identities while conducting transactions through the fraudulently opened online gambling accounts.

19.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did respond to the terms and conditions of online gambling entities by falsely and fraudulently representing that they were the Identity Theft Victims whose names and identities were associated with fraudulently opened accounts.

20.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did falsely and fraudulently obtain bonus bets from online gambling entities that they would not have received had they provided accurate and truthful information.

21.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did open and control accounts at multiple Fintech companies in their own names and in the names of numerous Identity Theft Victims.

22.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did use accounts at Fintech companies and associated virtual stored value cards to create the appearance that the fraudulently opened accounts were being operated by Identity Theft Victims and to conceal the true source and nature of the funds used to fund the fraudulent accounts.

23.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did engage in online gambling using the fraudulently opened accounts.

24.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did conduct financial transactions using virtual cards and accounts at Fintech companies, such as Sightline, to conceal and disguise from online gambling entities, such as FanDuel, the nature, location, source, ownership, and control of the proceeds of their scheme, including that KAPOOR, LILLANEY, and their co-conspirators were the true recipients of and controlled the funds withdrawn from fraudulently opened online gambling accounts.

25.     It was further part of the conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did engage in financial transactions using the proceeds of their scheme for their own personal use and benefit, including making transfers to bank accounts and investment accounts that they controlled.

<u>Overt Acts</u>

26.     In furtherance of the conspiracy and to effect the objects of the conspiracy, KAPOOR, LILLANEY, and their co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

<u>Initiation of the Scheme</u>

1.  On or about April 8, 2021, KAPOOR sent a text message to LILLANEY stating: "I figured out a way to 'withdraw' from these fake FanDuel accounts."

2.  On or about August 4, 2021, KAPOOR sent a series of text messages to LILLANEY stating, in relevant part: "I think I just found a way to cheese the FanDuel Promo"; "You know how we talked about just making a shit load of accounts in peoples names but the problem would be depositing/withdrawing from their accounts"; and "That problem is solved I think."

3.  On or about August 4, 2021, LILLANEY sent a series of text messages to KAPOOR stating, in relevant part: "Holy shit that's insane lmao"; "That's actually pretty nuts tho but I feel like Venmo might catch on?"; "What % of casino profits would I get lmfaooooo"; and "That's insanely cheese tho."

4.  On or about August 4, 2021, KAPOOR sent a text message to LILLANEY stating: "the SSNs [Social Security numbers] I have from the dark web are from all over so maybe there's some states that won't ask."

5.  On or about December 19, 2021, KAPOOR sent a text message to LILLANEY stating: "I'm just gonna buy some off the dark web tonight."

6.  On or about December 19, 2021, LILLANEY responded to KAPOOR: "Wanna get me like 5-10 too?"

7.  On or about December 22, 2021, KAPOOR sent a text message to LILLANEY stating: "Got the SSNs finally."

8.  On or about April 14, 2022, KAPOOR sent a text message to LILLANEY stating: "Well it's a stolen ssn," including a laughing emoji.

9.  On or about April 18, 2022, KAPOOR sent a text message to LILLANEY stating: "I think when the account is new the[y] give bigger bonuses."

10. On or about April 18, 2022, LILLANEY sent a text message to KAPOOR stating: "Fuck man I just want some socials."

11. On or about April 18, 2022, KAPOOR sent a text message to LILLANEY stating: "If all goes well I'm gonna crank out the green dots and get more socials."

12. On or about April 18, 2022, LILLANEY responded to KAPOOR asking: "Socials from where though."

13. On or about April 18, 2022, KAPOOR sent a text message to LILLANEY stating: "Site will hopefully be back up."

14. On or about April 18, 2022, KAPOOR sent a text message to LILLANEY stating: "Getting socials is sadly the easiest part."

15. On or about May 14, 2022, KAPOOR sent a text message to LILLANEY with the PII of approximately 25 Identity Theft Victims, including names, addresses, complete Social Security numbers, and dates of birth.

16. On or about May 15, 2022, LILLANEY sent a text message responding to KAPOOR: "So might be better if for now keep everything in ct and not have location or anything fuck it up idk or even different devices."

17. On or about July 5, 2022, KAPOOR sent a text message to LILLANEY stating: "I mean worst case scenario could start buying SSNs with license pics but those are more expensive."

18. On or about July 5, 2022, LILLANEY sent a text message responding to KAPOOR: "True but whatever lmao. . . . Like what $10?"

19. On or about July 5, 2022, KAPOOR sent a text message responding to LILLANEY: "No lol like $50 I think" with a laughing face emoji.

20. On or about October 18, 2022, LILLANEY sent a text message to KAPOOR containing the PII, including name, address, date of birth, and Social Security number of Victim I.L., whose identity is known to the Grand Jury.

21. On or about October 25, 2022, KAPOOR sent a text message to LILLANEY containing 50 Identity Theft Victims' PII, including names, addresses, and Social Security numbers.

22. On or about October 25, 2022, LILLANEY sent a series of text messages responding to KAPOOR: "How tf" and "WTF."

23. On or about November 30, 2022, LILLANEY sent a text message to KAPOOR stating: "Also if you go on darknet tomo for socials lmk."

24. On or about November 30, 2022, KAPOOR sent a series of text messages responding to LILLANEY: "I get them from telegram now"; "Same guy same prive"; and "price."

25. On or about November 30, 2022, LILLANEY sent a text message responding to KAPOOR: "Word if you're awake tomo can you get me like 100 I can send btc [Bitcoin]."

26. On or about November 30, 2022, KAPOOR sent a text message responding to LILLANEY: "Send the BTC . . . ."

27. On or about December 15, 2022, KAPOOR sent a text message to LILLANEY stating: "I think you might wanna start using the beenverified/truthfinder numbers."

28. On or about December 15, 2022, LILLANEY sent a series of text messages to KAPOOR stating: "Gimme more emails"; "Lol"; and "Also lmk next time you order socials I need too."

29. On or about December 15, 2022, KAPOOR sent a series of text messages responding to LILLANEY: "Omg lolololol"; "I'll order some today"; and "How many do you want."

30. On or about December 15, 2022, LILLANEY sent a series of text messages responding to KAPOOR: "Idk like 59" and "50."

31. On or about December 15, 2022, KAPOOR sent a text message responding to LILLANEY, in relevant part: "Sounds good I'll get them."

32. On or about December 15, 2022, LILLANEY sent a text message to KAPOOR with the PII, including name, address, date of birth, email, mobile phone number, and Social Security number of Victim T.P., whose identity is known to the Grand Jury.

33. On or about December 15, 2022, LILLANEY sent a text message to KAPOOR with the PII, labeled "Second account," including name, address, date of birth, email, mobile phone number, and Social Security number of Victim M.R., whose identity is known to the Grand Jury.

34. On or about March 21, 2023, KAPOOR sent a text message to LILLANEY stating: "I've just been going through the list of Social Security numbers and using the reverse phone search on the scam shield app. If the name matches, I just make that account. Didn't even have to open BeenVerified for the last 8 accounts I made that way."

35. On or about April 28, 2023, KAPOOR created a spreadsheet entitled "Tracker.xlsx" that contained Identity Theft Victims' PII, including names, addresses, dates of birth, emails, phone numbers, and Social Security numbers.

36. On or about October 25, 2023, LILLANEY sent a text message to KAPOOR stating: "In ct with ct ssns no suspensions even after placing bets, one account that won withdrew no issue at all."

37. On or about October 26, 2023, LILLANEY sent a text message to KAPOOR stating: "Also when you're up think you can ask social guy for 50 NJ and 50 CT all 50+ years old and when he sends address I can send btc?"

38. On or about November 5, 2023, LILLANEY sent a text message to KAPOOR with the PII, including name, address, date of birth, email, mobile phone number, and Social Security number of Victim C.S. and Victim T.V., whose identities are known to Grand Jury.

39. On or about December 8, 2023, LILLANEY sent a text message to KAPOOR stating: "I've done way more than 10 a day in ct without issue."

40. On or January 6, 2024, LILLANEY sent a text message to KAPOOR stating: "Fuck now I'm thinking when do we stop and delete everything (laughing emoji)."

41. On or about January 6, 2024, KAPOOR sent a text message "emphasizing" LILLANEY's prior text message.

42. On or about January 6, 2024, LILLANEY sent a text message to KAPOOR stating: "also we should deff stop talking about it with others I think."

43. On or about January 6, 2024, KAPOOR "emphasized" LILLANEY prior text message.

44. On or about April 13, 2024, KAPOOR sent a text message to LILLANEY stating: "Can you give me CT SSN for DraftKings."

45. On or about April 13, 2024, LILLANEY sent a text message responding to KAPOOR with the PII, including an address in New Haven, Connecticut, date of birth, phone number, and Social Security number, of Victim E.S., whose identity is known to the Grand Jury.

Use of the Identity and PII of Victim C.W.

46. On or about May 15, 2022, KAPOOR used BeenVerified and TruthFinder to obtain the personal information and PII of Victim C.W., whose identity is known to the Grand Jury.

47. On or about May 15, 2022, KAPOOR fraudulently opened FanDuel account 20615400 using Victim C.W.'s identity and PII.

48. On or about May 15, 2022, KAPOOR fraudulently opened the Sightline account ending in 1971 using Victim C.W.'s PII.

49. On or about May 17, 18, 19 and 22, 2022, KAPOOR placed bets and received bonus bets by fraudulently using the FanDuel account opened in the name of Victim C.W.

Use of the Identity and PII of Victim T.W.

50. On or about July 21, 2022, KAPOOR used BeenVerified and TruthFinder to obtain the personal information and PII of Victim T.W., whose identity is known to the Grand Jury.

51. On or about July 21, 2022, KAPOOR fraudulently opened FanDuel account 21145976 using Victim T.W.'s identity and PII.

52. On or about July 25, 2022 KAPOOR fraudulently represented himself to be Victim T.W. to dupe a FanDuel representative into resetting account verification questions.

53. On or about July 26, 2022, KAPOOR placed bets and received bonus bets by fraudulently using FanDuel account 21145976, opened in the name of Victim T.W.

54. On or about August 15, 2022, KAPOOR conducted a series of financial transactions to transfer approximately $1,748 from FanDuel account 21145976 to a Qube account ending in 7437.

Use of the Identity and PII of Victim I.O.

55. On or about October 25, 2023, LILLANEY fraudulently opened FanDuel account 31348237 using the identity and PII of Victim I.O., whose identity is known to the Grand Jury.

56. On or about October 25 and 27, 2023, LILLANEY placed bets and received bonus bets by fraudulently using FanDuel account 31348237, opened in the name of Victim I.O.

57. On or about October 27, 2023, LILLANEY executed transferred $2,150.78 from FanDuel account 31348237 to the Sightline account ending in 8481, opened in the name of Victim I.O.

58. On or about November 7, 2023, LILLANEY transferred approximately $1,998 from the Sightline account ending in 8481 to LILLANEY's Webster Bank account ending in 4239.

Use of the Identity and PII of Victim B.R.

59. On or about October 25, 2023, LILLANEY fraudulently opened FanDuel account 31349745 using the identity and PII of Victim B.R., whose identity is known to the Grand Jury.

60. On or about October 25, 2023, LILLANEY fraudulently opened a Sightline account using Victim B.R.'s identity and PII.

61. On or about October 25 and 27, 2023, LILLANEY placed bets and received bonus bets by fraudulently using FanDuel account 31349745, opened in the name of Victim B.R.

62. On or about October 26, 2023, LILLANEY transferred approximately $936 from FanDuel account 31349745 to the Sightline account opened in the name of Victim B.R.

Use of the Identity and PII of Victim S.P.

63. On or about October 25, 2023, LILLANEY fraudulently opened FanDuel account 31348274 using the identity and PII of Victim S.P., whose identity is known to the Grand Jury.

64. On or about October 25, 2023, LILLANEY fraudulently opened the Sightline account ending in 3934 using Victim S.P.'s identity and PII.

65. Between on or about October 27 and on or about November 1, 2023, KAPOOR placed bets and received bonus bets by fraudulently using FanDuel account 31348274, opened in the name of Victim S.P.

66. On or about October 28, 2023, LILLANEY sent a text message to KAPOOR containing Victim S.P.'s PII, including name, address, date of birth, and complete Social Security number.

67. On or about October 28, 2023, KAPOOR transferred approximately $396 from FanDuel account 31348274 to the Sightline account ending in 3934.

Use of the Identity and PII of Victim S.S.

68. On or about October 29, 2023, LILLANEY fraudulently opened FanDuel account 31482356 the identity and PII of Victim S.S., whose identity is known to the Grand Jury.

69. On or about October 29, 2023, LILLANEY fraudulently opened the Sightline account ending in 5123 using Victim S.S.'s PII.

70. On or about October 30, 2023, LILLANEY placed bets and received bonus bets by fraudulently using FanDuel account 31482356, opened in the name of Victim S.S.

71. On or about October 30, 2023, LILLANEY transferred $1,205.91 from FanDuel account 31482356 to the Sightline account ending in 5123.

72. On or about November 1, 2023, LILLANEY transferred approximately $4,005 from FanDuel account 31482356 to the Sightline account ending in 5123.

73. On or about November 3, 2023, LILLANEY transferred approximately $1,998 and approximately $1,208 from the Sightline account ending in 5123 to LILLANEY's own Webster Bank Account ending in 4239.

Use of the Identity and PII of Victim C.N.

74. On or about November 5, 2023, LILLANEY fraudulently opened FanDuel account 31626708 using the identity and PII of Victim C.N., whose identity is known to the Grand Jury.

75. On or about November 5, 2023, LILLANEY fraudulently opened a Sightline account using Victim C.N.'s identity and PII.

76. On or about November 5, 2023, LILLANEY placed bets and received bonus bets by fraudulently using FanDuel account 31626708, opened in the name of Victim C.N.

77. On or about November 6, 2023, LILLANEY transferred approximately $2,252 from FanDuel account 31626708 to the Sightline account opened using Victim C.N.'s identity and PII.

78. On or about November 21, 2023, LILLANEY transferred approximately $1,998 from the Sightline account opened using Victim C.N.'s identity and PII to LILLANEY's own Webster Bank Account ending in 4239.

Use of the Identity and PII of Victim D.L.

79. On or about November 28, 2023, LILLANEY fraudulently opened FanDuel account 32085498 using the identity and PII of Victim D.L., whose identity is known to the Grand Jury.

80. On or about November 28, 2023, LILLANEY transferred $10 from an Ivella account that he and KAPOOR controlled ending in 9775 to FanDuel account 32085498.

81. On or about November 28, 2023, LILLANEY placed bets and received and used bonus bets by fraudulently using FanDuel account 32085498, opened in the name of Victim D.L.

82. On or about November 29, 2023, LILLANEY transferred $2,000 from FanDuel account 32085498 to the Ivella account that he and KAPOOR controlled ending in 9775.

83. On or about November 29, 2023, LILLANEY transferred $2,000 from the Ivella account ending in 9775 to a different Ivella account that he and KAPOOR controlled ending in 2985.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TWENTY-FOUR
### (Wire Fraud)

27.    The allegations in Paragraphs 1 through 26 of this Indictment are incorporated by reference.

28.    Beginning in or about April 2021 and continuing through on or about the date of this Indictment, in the District of Connecticut and elsewhere, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY knowingly and with intent to defraud, devised and intended to devise the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as described above.

29.    On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property, KAPOOR and LILLANEY did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, and sounds, each such wiring as set forth below constituting a separate count of this Indictment:

| Count | Approx. Date | Use of Interstate Wire |
|-------|--------------|------------------------|
| 2 | 5/15/22 | Accessing a BeenVerified server located outside Connecticut to obtain Victim C.W.'s personal information and PII in order to fraudulently open FanDuel account 20615400 in the name of Victim C.W. |

| Count | Approx. Date | Use of Interstate Wire |
|-------|--------------|------------------------|
| 3 | 5/15/22 | Accessing a Sightline server located outside Connecticut to fraudulently open a Sightline account, ending in 1971, in the name of Victim C.W. |
| 4 | 5/17/22 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 20615400, fraudulently opened in the name of Victim C.W. |
| 5 | 5/18/22 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 20615400, fraudulently opened in the name of Victim C.W. |
| 6 | 7/21/22 | Accessing a BeenVerified server located outside Connecticut to obtain Victim T.W.'s PII in order to fraudulently open a FanDuel account 21145976 in the name of Victim T.W. |
| 7 | 7/25/22 | Engaging in an online conversation with a FanDuel representative in connection with fraudulently opening and utilizing FanDuel account 21145976 in the name of Victim T.W. |
| 8 | 7/26/22 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 21145976, fraudulently opened in the name of Victim T.W. |
| 9 | 11/30/22 | LILLANEY, while in Connecticut, sending a text message from his phone ending in 0354 to KAPOOR, while outside of Connecticut, stating: "Also if you go on darknet tomo for socials lmk." |
| 10 | 11/30/22 | KAPOOR, while outside of Connecticut, sending a text message from his phone ending in 0455 to LILLANEY, while in Connecticut, stating: "I get them from telegram now." |
| 11 | 10/25/2023 | Accessing a Sightline server located outside Connecticut to fraudulently open a Sightline account, ending in 8481, in the name of Victim I.O. |

| Count | Approx. Date | Use of Interstate Wire |
|---|---|---|
| 12 | 10/25/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31348237, fraudulently opened in the name of Victim I.O. |
| 13 | 10/25/23 | Accessing a Sightline server located outside Connecticut to fraudulently open a Sightline account, ending in 1334, in the name of Victim B.R. |
| 14 | 10/25/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31349745, fraudulently opened in the name of Victim B.R. |
| 15 | 10/25/23 | Accessing Sightline to fraudulently open a Sightline account, ending in 3934, in the name of Victim S.P. |
| 16 | 10/25/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31348274, fraudulently opened in the name of Victim S.P. |
| 17 | 10/27/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31348274, fraudulently opened in the name of Victim S.P. |
| 18 | 10/27/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31348237, fraudulently opened in the name of Victim I.O. |
| 19 | 10/29/23 | Accessing a Sightline server located outside Connecticut to fraudulently create a Sightline account, ending in 5123, in the name of Victim S.S. |
| 20 | 10/30/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31482356, fraudulently opened in the name of Victim S.S. |

| Count | Approx. Date | Use of Interstate Wire |
|-------|--------------|------------------------|
| 21 | 11/5/23 | Accessing a Sightline server located outside Connecticut to fraudulently create a Sightline account, ending in 1695, in the name of Victim C.N. |
| 22 | 11/5/23 | Accessing a FanDuel server to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 31626708, fraudulently opened in the name of Victim C.N. |
| 23 | 11/28/23 | Transferring $10 from the Ivella account ending in 9775 to FanDuel account 32085498, fraudulently opened in the name of Victim D.L. |
| 24 | 11/28/23 | Accessing a FanDuel server located outside Connecticut to obtain betting lines and odds in order to place bets and receive bonus bets using FanDuel account 32085498, fraudulently opened in the name of Victim D.L. |

All in violation of Title 18, United States Code, Section 1343.

<u>COUNT TWENTY-FIVE THROUGH THIRTY-TWO</u>
(Identity Fraud)

30.     The allegations in Paragraphs 1 through 26, 28, and 29 of this Indictment are incorporated by reference.

31.     On or about the dates set forth below, in the District of Connecticut, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person with the intent to commit, to aid and abet, and in connection with, an unlawful activity that constitutes a violation of Federal law, namely, the wire fraud scheme charged in Counts 2 through 24, each such transfer, possession, and use of a means of identification as set forth below constituting a separate count of this Indictment:

| Count | Approx. Date | Transfer, Possession, and Use of a Means of Identification |
|-------|--------------|-------------------------------------------------------------|
| 25 | 5/15/22 | Use of Victim C.W.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 20615400. |
| 26 | 7/21/22 | Use of Victim T.W.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 21145976. |
| 27 | 10/25/23 | Use of Victim I.O.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 31348237. |
| 28 | 10/25/23 | Use of Victim B.R.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 31349745. |
| 29 | 10/25/23 | Use of Victim S.P.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 31348274. |
| 30 | 10/29/23 | Use of Victim S.S.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 31482356. |
| 31 | 11/5/23 | Use of Victim C.N.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 31626708. |
| 32 | 11/28/23 | Use of Victim D.L.'s name, date of birth, and full or partial Social Security number to fraudulently open FanDuel account 32085498. |

All in violation of Title 18, United States Code, Sections 1028(a)(7) and 2.

## COUNTS THIRTY-THREE AND THIRTY-FOUR
### (Aggravated Identity Theft)

32.    The allegations in Paragraphs 1 through 26, 28, and 29 of this Indictment are incorporated by reference.

33.    On or about the dates set forth below, in the District of Connecticut, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code § 1028A(c), namely, wire fraud in violation of Title 18, United States Code, Section 1343, as charged in Counts 6 through 8 and Counts 15 through 17 of this Indictment, knowing that the means of identification belonged to another actual person, with each such transfer, possession, and use as set forth below constituting a separate count of this Indictment:

| Count | Approx. Date | During and in Relation To | Transfer, Possession, and Use of Means of Identification |
|-------|--------------|---------------------------|----------------------------------------------------------|
| 33 | 7/19/22 | Counts 6, 7, and 8 | Text message from LILLANEY from the number ending in 0354 to KAPOOR at his number ending in 0455 containing the name, address, date of birth, Social Security number, and phone number of Victim T.W. |
| 34 | 10/28/23 | Counts 15, 16, and 17 | Text message from LILLANEY from the number ending in 0354 to KAPOOR at his number ending in 0455 containing the name, address, date of birth, Social Security number, and phone number of Victim S.P. |

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT THIRTY-FIVE
### (Money Laundering Conspiracy)

34.    The allegations in Paragraphs 1 through 26, 28, 29, and 31 of this Indictment are incorporated by reference.

35.    Beginning in or about 2021 and continuing until or about the date of this Indictment, in the District of Connecticut and elsewhere, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY did knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Section 1956, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce involving the proceeds of specified unlawful activities, that is, proceeds of the conspiracy as charged in Count One as a violation of Title 18, United States Code, Section 371, of the wire fraud scheme charged in Counts Two through Twenty-Four as violations of Title 18, United States Code, Section 1343, and of the identity fraud charged in Counts Twenty-Five through Thirty-Two as violations of Title 18, United States Code, Section 1028(a)(7), knowing that the property involved such financial transactions represented the proceeds of some form of unlawful activity and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Purpose of Money Laundering Conspiracy

36.    The purpose of KAPOOR's and LILLANEY's money laundering conspiracy was to conduct and attempt to conduct financial transactions designed in whole or in part to conceal from FanDuel, Fintech companies, and various financial institutions the true nature, location, source, and ownership of the proceeds of a specified unlawful activity, namely, their scheme to defraud.

### Manner and Means of the Conspiracy

37.    It was part of the money laundering conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did use text messages to discuss strategies and techniques that

they could employ to conceal their true identities, and conceal and disguise the ownership, control, and movement of proceeds in and from fraudulent FanDuel accounts to their own accounts.

38.    It was further part of the money laundering conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did open and control multiple accounts, both in their own names and in the names of Identity Theft Victims, at banks and at Fintech companies, including Sightline, Privacy.com, Ivella, and Qube, for the purpose of using such accounts to move and disguise the ownership of fraudulent proceeds.

39.    It was further part of the money laundering conspiracy that KAPOOR, LILLANEY, and their co-conspirators would and did conduct financial transactions involving the proceeds from fraudulent FanDuel accounts by transferring funds using virtual stored value cards and accounts at Fintech companies opened in the names of Identity Theft Victims, all to create the appearance that the purported owners of fraudulent FanDuel accounts and Fintech accounts were receiving and in control of the winnings, when KAPOOR and LILLANEY were the true recipients of the funds.

40.    It was further part of the money laundering conspiracy that after repeatedly transferring fraudulent proceeds, KAPOOR and LILLANEY converted them to their own use and benefit, including by transferring such proceeds to investment accounts at Robin Hood.

41.    It was further part of the money laundering conspiracy that, on or about May 19, 2022, KAPOOR transferred approximately $3,840 from FanDuel account 20615400, opened in the name of Victim C.W., to the Sightline account ending in 1971, also opened in the name of Victim C.W., to create the appearance that Victim C.W. had ownership and control of the funds.

42.    It was further part of the money laundering conspiracy that, on or about June 1, 2022, KAPOOR transferred approximately $2,000 from the Sightline account ending in 1971,

opened in the name of Victim C.W., to KAPOOR's own Bank of America Account ending in 6598 and, in so doing, concealed and disguised from Bank of America that the source of the funds was FanDuel account 20615400, opened in the name of Victim C.W.

43.     It was further part of the money laundering conspiracy that, on or about June 2, 2022, KAPOOR again transferred approximately $2,000 from the Sightline account ending in 1971 to his own Bank of America Account ending in 6598 with the same purpose and effect.

44.     It was further part of the money laundering conspiracy that, on or about December 18, 2022, KAPOOR sent a text message to LILLANEY stating: "I can think of so many ways to launder cash through betting sites straight to the bank as legit income." LILLANEY responded to KAPOOR's text message by "laughing."

45.     It was further part of the money laundering conspiracy that, on or about May 5, 2023, KAPOOR sent a text message to LILLANEY stating: "Another option may be linking card to Apple Pay and depositing through that. Looks more legit." LILLANEY responded: "Yeah just lmk if you have issues with it."

46.     It was further part of the money laundering conspiracy that, on or about November 1, 2023, LILLANEY transferred approximately $4,005 from FanDuel account 31482356, opened in the name of Victim S.S., to the Sightline account ending in 5123, also opened in the name of Victim S.S., to create the appearance that Victim S.S. had ownership and control of the funds.

47.     It was further part of the money laundering conspiracy that, on or about November 3, 2023, LILLANEY transferred approximately $1,998 from the Sightline account ending in 5123, opened in the name of Victim S.S., to LILLANEY'S own Webster Bank Account ending in 4239, and, in so doing, concealed and disguised from Bank of America that the source of the funds was FanDuel account 31482356, opened in the name of Victim S.S.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS THIRTY-SIX THOUGH FORTY-FIVE
(Money Laundering)

48.    The allegations in Paragraphs 1 through 26, 28, 29, 31, and 35 through 47 of this Indictment are incorporated by reference.

49.    On or about the dates set forth below, in the District of Connecticut and elsewhere, the defendants AMITOJ KAPOOR and SIDDHARTH LILLANEY did knowingly conduct and attempt to conduct the following financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity, that is, proceeds of the conspiracy as charged in Count One as a violation of Title 18, United States Code, Section 371, of the wire fraud scheme charged in Counts Two through Twenty-Four as violations of Title 18, United States Code, Section 1343, and of the identity fraud charged in Counts Twenty-Five through Thirty-Two as violations of Title 18, United States Code, Section 1028(a)(7), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities, and that while conducting and attempting to conduct such financial transactions, KAPOOR and LILLANEY knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, each such financial transaction as set forth below constituting a separate count of this Indictment:

| Count | Approx, Date | Financial Transaction and Concealment |
|-------|--------------|---------------------------------------|
| 36 | 5/19/22 | Transferring approximately $3,840 from FanDuel account 20615400, opened in the name of Victim C.W., to the Sightline account ending in 1971, also opened in the name of Victim C.W., to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |

| Count | Approx, Date | Financial Transaction and Concealment |
|-------|--------------|----------------------------------------|
| 37 | 6/1/22 | Transferring approximately $2,000 from the Sightline account ending in 1971, opened in the name of Victim C.W., to KAPOOR'S Bank of America account ending in 6598, to conceal the nature and source of those proceeds of a specified unlawful activity. |
| 38 | 10/15/22 | Transferring approximately $1,748 from FanDuel account 21145976, opened in the name of Victim T.W., to the Qube account ending in 7437 to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |
| 39 | 10/26/23 | Transferring approximately $936 from FanDuel account 31349745, opened in the name of Victim B.R., to the Sightline account card ending in 1334, opened in the name Victim B.R., to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |
| 40 | 10/27/23 | Transferring approximately $2,150.78 from FanDuel account 31348237, opened in the name of Victim I.O., to the Sightline account ending in 8481 to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |
| 41 | 10/28/23 | Transferring approximately $396 from the FanDuel account 31348274, opened in the name of Victim S.P., to the Sightline account ending in 3934, also opened in the name Victim S.P., to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |
| 42 | 11/1/23 | Transferring approximately $4,005 from FanDuel account 31482356, opened in the name of Victim S.S., to the Sightline account ending in 5123, also opened in the name of Victim S.S., to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |
| 43 | 11/3/23 | Transferring approximately $1,998 from a Sightline account ending in 5123, opened in the name of Victim S.S., to LILLANEY's own Webster Bank Account ending in 4239, to conceal the nature and source of those proceeds of a specified unlawful activity. |
| 44 | 11/6/23 | Transferring approximately $2,252 from FanDuel account 31626708, opened in the name of Victim C.N., to the Sightline account ending in 1695, also opened in the name Victim C.N., to conceal that KAPOOR and LILLANEY had ownership and control of those proceeds of a specified unlawful activity. |

| Count | Approx, Date | Financial Transaction and Concealment |
|-------|-------------|----------------------------------------|
| 45 | 11/21/23 | Transferring approximately $1,998 from the Sightline account ending in 1635, opened in the name Victim C.N., to LILLANEY'S own Webster Bank Account ending in 4239, to conceal the nature and source of those proceeds of a specified unlawful activity. |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

<u>NOTICE OF FORFEITURE ALLEGATIONS</u>
(Forfeiture Relating to Wire Fraud Conspiracy and Wire Fraud)

50.    Upon conviction of the wire fraud conspiracy alleged in Count One and the substantive wire fraud offenses alleged in Counts Two through Twenty-Four of this Indictment, defendants KAPOOR and LILLANEY shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 371 or 1343, including, but not limited to, the following:

Money Judgment:

A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1343 and conspiracy to violate Title 18, United States Code, Section 1343.

51.    If any of the above described forfeitable property, as a result of any act or omission of the defendants, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek

forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1) as incorporated by Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

NOTICE OF FORFEITURE ALLEGATIONS
(Forfeiture Relating to Money Laundering)

52.    Upon conviction of the money laundering conspiracy offense alleged in Count Thirty-Five and the substantive money laundering offenses alleged in Counts Thirty-Six through Forty-Five of this Indictment, defendants KAPOOR and LILLANEY shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all right, title, and interest in any and all money and any other property, real or personal, involved in such offenses in violation of Title 18, United States Code, Section 1956, and all property traceable to such property, including but not limited to the following:

> Money Judgment:
>
> A sum of money equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds involved in the offenses as charged in Count Thirty-Five and Counts Thirty-Six through Forty-Five.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek

forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 982(a)(1), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

_____
FOREPERSON

UNITED STATES OF AMERICA

_____
DAVID X. SULLIVAN
UNITED STATES ATTORNEY

_____
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY